IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1893.

RELIANCE COAL, ETC., CO. *v.* KENTUCKY COAL, ETC., CO.

(*Knoxville.* September 16, 1893.)

1. LEASE. *Reservation in lease of coal lands touching ways and structures construed.*

A clause in a lease of coal lands, reserving to the lessors such portions of the leased lands as may be necessary for roads, railways, waterways, side-tracks, and other structures necessary for the profitable working of other lands of the lessor, but not to injuriously interfere with the lessee, applies only to surface-ways and structures, and does not authorize underground entries and ways or the establishment of tipples, chutes, and other mining conveniences, in the absence of express terms to the contrary, since such ways are not of necessity.

Case cited and approved: Pearne *v.* Coal, etc., M. & M. Co., 90 Tenn., 629.

2. SAME. *Same.*

   A reservation in a lease of coal lands, retaining to the lessor or its assigns the joint use with the lessee of all such portions of the land as may be necessary for roads, tracks, or structures for the profitable working of other lands in the vicinity, does not authorize a structure designed for the exclusive use of the lessor's assigns.

FROM CLAIBORNE.

Appeal from Chancery Court of Claiborne County. JOHN P. SMITH, Ch.

H. M. CARR, G. W. SAULSBERRY, and LUCKEY & SANDFORD for Complainant.

JESSE L. ROGERS for Respondent.

WILKES, J.   Complainant and defendant are lessees from the American Association (limited) of adjoining tracts of coal land in Claiborne County, complainant's lease being of date August 8, 1891, and covering what is called in the record lease No. 7, while defendant's lease is dated September 29, 1891, and covers what is called lease No. 9.

The lease to complainant provides, among other things, that it shall have the exclusive right and privilege of mining coal upon the property leased, and that it shall, at all times during the lease, peaceably and quietly hold and enjoy the premises leased, without any let or hinderance from the lessor or

its assigns, or any other persons lawfully claiming the same, or any part thereof. It also provides for a minimum royalty or dead rental of $5,000 per year for each year after the first, or a minimum annual rental of ten dollars per acre, and covers about 500 acres of ground.

The fourth paragraph of the lease contains this language: "Said first party [meaning lessor] retains and reserves the right   *   *   *   to build and construct houses, roads, railways, tramways, quarries, brick-works, saw-mills, or other works or improvements, or to farm thereon all land not used or required by the second party for its works, which work is to have first consideration and preference."

The fifth clause contains: "The party of the first part [to wit, the lessor] retains the right, for itself or its assigns, to the joint use, during the continuance of this lease, of all such portions of the above described lands as may be necessary for roads, railways, water-ways, side-tracks, and other structures necessary for the profitable working of other lands of the party of the first part, or its assigns, in the vicinity of the above leased premises, but not to injuriously interfere with the working of the party of the second part," etc.

In the lease to defendants of lot No. 9, these words of conveyance are also used, to wit: "All such rights of making entries and erecting structures for mining purposes under, through, and upon the premises adjoining the above, known as lease

No. 7, as the party of the first part is competent to grant."

On the property leased by complainant, defendant began opening an entry through and under the surface; also began the construction of a side-track at the opening of the entry, about 500 feet in length, and is proposing to erect a tipple and coal-chute for the purpose of loading its coal into cars at the opening of the entry, and was cutting timber and removing coal from the premises of complainant. Whereupon, this bill was filed to enjoin defendant from the further opening of entries and the commission of any further trespasses, and from disposing of the coal taken out of the entry, and for an account.

Defendant admits that it had commenced to open the entry, as stated, along the coal seam on complainant's property; that it intended to make an entry sixteen feet wide for the distance of one hundred feet, and then to drive a cross entry, at right-angles, nine feet wide, until it reached its own premises, and that, in so doing, it was taking the coal out of the entry as it progressed, just as it would dirt, stone, or any other material obstructing the way, and it claimed the right to do this under the clauses of the leases heretofore set out.

On the trial of the cause, after much proof was taken, the Chancellor held that the complainant was entitled to no relief; that the defendant had the right to make necessary roads, railways, water-ways, side-tracks, or other structures over or

through the tract of land leased to complainant necessary for the profitable working of the lands leased to the defendant, but so as to not injuriously affect or interfere with the working of complainant on his leased premises.

The Court further found and decreed that such way as the defendant was making through complainant's land was necessary for the working profitably of the coal on defendant's land, and that said way, as well as the side-track that the defendant was constructing at its entry at the time of the filing of the bill in this case, would not injuriously interfere with the working of the complainant on its premises. The injunction was thereupon dissolved, and defendant was permitted to proceed with its work, under the direction of the Court, and complainant was taxed with the costs. From this decree complainant appealed, and has assigned errors.

First, that the Chancellor erred in finding that the way, as defendant was making the same through complainant's lease, was necessary for the profitable working of the coal on defendant's lease.

Upon this question of fact the proof is very conflicting, and the contention of each party is well sustained by the testimony of mining and engineering experts. After a careful examination of the entire testimony, we are of opinion the Chancellor is not sustained by the weight of the testimony. Under the proof it is apparent that the opening of the way as proposed by defendant

would be very advantageous to it, and that by the use of such way its property could be more profitably, easily, and conveniently worked; but we are not convinced that such way is necessary for the profitable working of the coal on defendant's premises, in the sense that no other way is open for its profitable operation; but the weight of testimony is that the coal on defendant's leased premises may be · profitably, but not so conveniently, worked without making use of this way. We consider this established by the testimony of Jackson, Dickson, Park, and, to some extent, conceded by defendant and its witnesses.

The second assignment is, that the Chancellor erred in finding that the way, as the same was being opened by defendant through complainant's lease, together with the side-tracks that defendant was constructing at its entry, would not injuriously interfere with the working of complainant's premises.

Upon this question of fact there is likewise great conflict of apparently reliable testimony; and it is remarkable that competent, reliable, intelligent witnesses, many of them experts with large experience and ample opportunities of knowledge, should differ so widely from each other. We are fully satisfied, however, that the entry proposed to be made, and the side-tracks proposed to be laid, and the tipple, chute, and other appurtenances of the mining plant proposed to be erected and built on complainant's premises by the defendant, would

materially interfere with, damage, and injure complainant in its rights under its lease, by occupying one of the most eligible sites on its lease, to its own exclusion; by taking out coal from complainant's premises which it has the right to mine; by erecting structures and a mining plant for defendant's use on complainant's land, to the exclusion and prejudice of complainant in erecting a similar plant.

The third assignment of error is, that the Chancellor erred in holding that defendant had the right to make necessary roads, railways, waterways, side-tracks, or other structures over or *through* complainant's premises.

This assignment involves the proper construction of the provisions of the two leases, portions of which have been heretofore set out. While we may look to the language used in the lease to defendant to ascertain its rights as against its lessor, it is evident that, being of a later date than complainant's lease, it cannot prejudice the same.

It will be observed that only the fifth clause of the lease relates to the reservations made in favor of the lessor or its assigns in regard to contiguous property, clause No. 4 relating to such reservations as were made to the lessor in the premises therein leased—the latter relating to the premises leased and the former to premises in the vicinity of that leased.

Looking to the language of this clause, we are of opinion that it relates only to such surface

ways over the leased premises as are necessary for the purposes of ingress and egress to the surface of other properties adjacent or in the vicinity, and does not relate to or embrace underground entries through the leased premises, and the terms railways, water-ways, side-tracks, and other structures necessary for the profitable working of other lands in the vicinity, mean such surface ways and structures as are necessary for such ingress and egress.

To hold that, under this language, underground entries could be made by defendant on complainant's premises, and underground ways could be cut through the coal under its surface, and that tipples, chutes, and other conveniences of a mining plant could be established on complainant's land, would be to subject it to such a servitude as would greatly damage, if not totally destroy, its value. If this were so, and complainant's premises were favorably located, then it would follow that entries could be run under its surface in every direction that might be beneficial to other properties in the vicinity, and it might be made the common center of mining plants for all the property in its vicinity, to the great damage or utter destruction of complainant's rights under its lease. Such incumbrances and servitudes cannot arise unless they are expressly provided for, and reservations to that extent are made in plain, unambiguous terms. Such rights do not arise in favor of contiguous land-owners by implication of law, and such ways are not ways of necessity, and the question is not

one of convenience, but one of necessity. *Pearne v. Coal Creek Mining and Manufacturing Co.*, 6 Pickle, 629.

For the same reason and upon the same grounds the fourth assignment of errors is well made, and must be sustained. This assignment is, that the Chancellor erred in finding that the entries, side-tracks, tipples, and other structures in process of erection by defendant on complainant's lease, came within the reservation clause in complainant's lease providing for road, railways, water-ways, side-tracks, and other structures as therein specified.

This language in complainant's lease cannot be enlarged or in anywise altered by that put in the lease to defendant, to wit: "That the defendant should have all such rights of making entries and erecting structures for mining purposes *under, through,* and upon the premises of complainant as the lessor was competent to grant."

The lessor could grant no rights over complainant's premises other than in strict conformity with the reservations made in complainant's lease.

Again, the reservation, under the fifth clause, retains the right to the lessor or its assigns to the *joint use* of all such portions of the lands as may be necessary for roads, railways, water-ways, side-tracks, and other structures necessary for the profitable working of other lands in the vicinity, etc. There is no reservation of any way, track, structure, or road to be used *exclusively* by an owner of other property, but the reservation is only

for the *joint use* of such owner and complainant. It will hardly be contended that the entry proposed to be made by defendant under complainant's land, and the side-tracks and mining plant intended to be built by it, are intended for the joint use of itself and complainant; but they are designed for defendant's exclusive use, and are not authorized under the reservations in complainant's · lease.

It follows that the Chancellor was in error in refusing . relief to complainant, and his decree is reversed, and the injunction prayed in the Court below will be made perpetual. Defendant will pay the costs of this and the lower Court, and the cause is remanded for an account of the coal mined, timber cut, and waste committed. on complainant's premises by defendant.